United States District Court
Southern District of Texas

**ENTERED**

July 02, 2020

David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ARGONAUT INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-19-2296 |
| | § | |
| RIO MARINE, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

A subcontractor's employee injured at a shipyard sued the shipyard and another subcontractor working at the same site.  Victor Martinez, a Performance Personnel, LLC employee, was injured working at the John Bludworth Shipyard.  Martinez sued Bludworth and Rio Marine, another of Bludworth's subcontractors working at the same worksite, for negligence and gross negligence.  *See generally Martinez v. Rio Marine, Inc.,* No. 2018CCV-61604-3 (Co. Ct. at Law No. 3, Nueces County, Tex. filed Sep. 4, 2018).  This underlying case is ongoing and currently scheduled for a jury trial starting August 3, 2020.

This is one of two federal lawsuits by an insurer arising from that state-court lawsuit.  In the first lawsuit, Navigators Insurance Company, which issued a marine general policy to Bludworth, sued for a declaratory judgment defining its obligations to Bludworth's subcontractors, Performance and Rio Marine, for the costs and liability they face in defending Martinez's negligence claims against them.  The issues in that lawsuit are whether Master Service Agreements between Bludworth and Rio Marine, and between Bludworth and Performance, required Navigators to defend and indemnify either or both subcontractors under the insurance policy Navigators issued to Bludworth.

This second declaratory judgment lawsuit is by another insurance company, Argonaut, which issued a marine general liability policy to Performance. The issue in this second lawsuit is whether Argonaut's policy covers liability for the costs and damages caused by an employee's bodily injuries if those costs and damages are assumed by Performance in an "insured contract." Performance contends that its Master Service Agreement with Bludworth is such a contract. A related issue is whether a general exclusion for employee liability applies to insured contracts. Starstone Insurance Company, Performance's excess policy insurer, intervened on Argonaut's behalf. The facts are undisputed; the issues are presented in cross-motions for summary judgment.

Based on the pleadings in this case, the underlying *Martinez* litigation, the motions and briefs, the record, and the applicable law, Argonaut's motion for summary judgment is granted and Rio Marine and Bludworth's motions for partial summary judgment are denied. Argonaut's policy does not cover Performance's defense and indemnity obligations contained within the Performance-Bludworth Master Service Agreement.

The reasons for these rulings are explained below.

I.     **Background**

The Performance-Bludworth subcontractor relationship was governed by a Master Service Agreement. This Agreement contained the following indemnification clause:

> 6.1 HOLD HARMLESS & INDEMNIFICATION: THE SUBCONTRACTOR [Performance] AGREES TO INDEMNIFY AND HOLD HARMLESS BLUDWORTH, ITS OFFICERS, DIRECTORS, EMPLOYEES, AGENTS AND OTHER SUBCONTRACTORS FROM AND AGAINST ALL DAMAGE, LIABILITY OR COST, INLCUDING ATTORNEYS' FEES AND DEFENSE COSTS ARISING OUT OF OR IN ANY WAY CONNECTED WITH THE PERFORMANCE OF THE SERVICES BY SUBCONTRACTOR UNDER THIS AGREEMENT, WITHOUT LIMIT AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF, INCLUDING ILLNESS, BODILY INJURY

2

OR DEATH TO ANY OFFICER, EMPLOYEE, AGENT, REPRESENTATIVE OR INVITEE OF SUBCONTRACTOR, ILLNESS, BODILY INJURY OR DEATH TO ANY THIRD PARTY OR ILLNESS, BODILY INJURY OR DEATH OF ANY EMPLOYEE, OFFICER OR DIRECTOR OF CONTRACTOR, AND ANY PROPERTY DAMAGE TO THE PROPERTY OF BLUDWORTH, SUBCONTRACTOR OR THIRD PARTY WHETHER SUCH ILLNESS, BODILY INJURY OR PROPERTY DAMAGE IS CAUSED BY THE SOLE, JOINT OR CONCURRENT NEGLIGENCE OF BLUDWORTH, EXCEPTING ONLY SUCH DAMAGE, LIABILITY OR COST ARISING OUT OF THE WILFUL MISCONDUCT OF BLUDWORTH.

(Docket Entry No. 23-4 at 7) (emphasis in original).

The Performance-Bludworth Master Service Agreement required Performance to maintain a general liability insurance policy to cover contractual liability, and an excess liability insurance policy "specifically including" contractual liability.   (*Id.* at 4–5).   Under the Agreement, Performance obtained a general marine liability insurance policy from Argonaut Insurance Company and an excess insurance policy from Starstone Insurance Company.

After Martinez sued in state court, Bludworth sent a demand letter to Performance and Argonaut for its defense and indemnity under the Master Service Agreement.  (Docket Entry No. 24-4).  Argonaut's policy generally excludes contractual liability undertaken by its insured, but it does contain an exception for "insured contracts."  (Docket Entry No. 23-1 at 15).  The policy defines "insured contracts" as "[t]hat part of any other contract or agreement pertaining to the business of the Named Insured . . . under which the Named Insured assumes tort liability of another party to pay for Bodily Injury or Property Damage to a third person or organization" so long as the contract does not "indemnif[y] another for the sole negligence of such other person or organization."  (*Id.* at 38).

Argonaut denied Bludworth's coverage demand, arguing that the Performance-Bludworth Master Service Agreement was not an "insured contract" under the policy.  (Docket Entry No.

24-5).  Argonaut cited an additional exclusion that denied coverage for damages "arising out of" an employee's bodily injuries "in the course of employment by the insured."  (Docket Entry No. 23-1 at 16).  This employee exclusion applies "whether the insured may be liable as an employer or in any other capacity; and to any obligation to share damages with or repay someone else who must pay damages because of the injury."  (*Id.*).  Argonaut explained that even if the Master Service Agreement was an insured contract, coverage for the injuries to Martinez are excluded by this additional policy provision.  (Docket Entry No. 24-5 at 3).

Because Argonaut rejected Performance's claim for coverage based on Bludworth's demand, Bludworth's Insurer, Navigators Insurance Company, has funded Bludworth's defense in the *Martinez* suit.  (Docket Entry No. 24-2 at 1).  Navigators filed the sister case, arguing that the Master Service Agreement between Performance and Bludworth requires Performance to defend Bludworth in the *Martinez* suit and to indemnify Bludworth for any damages it incurs in that litigation.  *See generally Navigators Ins. Co. v. Rio Marine, Inc.*, No. 4:19–cv–00461 (S.D. Tex. filed Feb. 11, 2019).

After Navigators filed its declaratory judgment action in the sister case, Argonaut filed this case, arguing that the insurance policy it issued to Performance does not cover any defense or indemnification expenses resulting from the *Martinez* suit.  (Docket Entry No. 1).  Bludworth and Rio Marine counterclaimed, seeking a declaratory judgment that the Argonaut policy covers the Master Service Agreement as an insured contract and that the exclusion of coverage for an insured's contractually assumed liabilities does not apply.  (Docket Entry Nos. 9, 10).  Starstone intervened, arguing that the policy did not apply to the defense and indemnification costs Bludworth and Rio Marine have incurred in the *Martinez* suit.  (Docket Entry No. 29).

4

After initial disclosures, Argonaut, Bludworth, and Rio Marine moved for summary judgment. (Docket Entry Nos. 23, 24, 25). Starstone also moved for summary judgment, taking the same position as Argonaut. (Docket Entry No. 45). In addition to the contractual arguments outlined above, Argonaut argues that Rio Marine and Bludworth lack standing to seek coverage directly under the Argonaut policy because they are not third-party beneficiaries to the policy and equitable subrogation does not apply to their claims. (Docket Entry No. 30 at 17–19).

The parties' arguments are addressed in turn under the legal standards that apply.

## II.     The Legal Standards

### A.     Summary Judgment

"Summary judgment is appropriate only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Vann v. City of Southaven*, 884 F.3d 307, 309 (5th Cir. 2018) (per curiam) (quoting *Griggs v. Brewer,* 841 F.3d 308, 311–12 (5th Cir. 2016)). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Burrell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Brandon v. Sage Corp.*, 808 F.3d 266, 269–70 (5th Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

### B.     The Law That Applies

The parties agree that Argonaut issued its policy to Performance in Texas and that Texas law controls its interpretation. *N. Am. Specialty Ins. Co. v. Debis Fin. Servs., Inc*., 513 F.3d 466,

5

470 (5th Cir. 2007) ("Absent a specific and controlling federal rule, cases involving marine insurance contracts are governed by state law.").

"Insurance policies are controlled by rules of interpretation and construction which are applicable to contracts generally." *Richards v. State Farm Lloyds*, 597 S.W.3d 492, 497 (Tex. 2020) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus.*, Inc., 907 S.W.2d 517, 520 (Tex. 1995)). "The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument." *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 300 (5th Cir. 2020) (quoting *Nat'l Union Fire*, 907 S.W.2d at 520). "When terms are defined in an insurance policy, those definitions control the interpretation of the policy." *Id.* (quoting *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 219 (Tex. 2003)). "When interpreting contract language, courts must strive to give meaning to 'every sentence, clause, and word to avoid rendering any portion inoperative.'" *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 271 (5th Cir. 2011) (quoting *Balandran v. Safeco Ins. Co. of Am.,* 972 S.W.2d 738, 741 (Tex. 1998)).

## III.   Standing

Argonaut contends that neither Rio Marine nor Bludworth has standing to sue Argonaut directly because they are not named insureds under the policy Argonaut issued to Performance. Texas law generally does not allow a plaintiff to sue a defendant's liability insurer to recover benefits until the plaintiff's liability has been established. *Angus Chem. Co. v. IMC Fertilizer, Inc.,* 939 S.W.2d 138, 138 (Tex. 1997). This "no direct action" rule protects the defendant and its insurer against unfair prejudice or potential conflicts of interest that could arise in an action by the injured third party. *In re Essex Ins. Co.*, 450 S.W.3d 524, 526–27 (Tex. 2014) (per curiam) (explaining that an action by an injured third party against an insurer could create a conflict of

6

interest between the insurer and its insured and require admitting evidence of liability insurance, in violation of Texas Rule of Evidence 411).  "[T]hese policy reasons for the 'no direct action' rule apply regardless of whether the plaintiff is seeking declaratory relief or money damages from the insurer." *Id*. at 527.

The "no direct action" rule, however, does allow an insurer to seek a declaratory judgment as to whether it must defend or indemnify its insured before the insured's liability is determined in the underlying tort action. *Founders Ins. Co. v. Billy's Bar & Grill, LLC,* No. 3:18–cv–00367–M, 2019 WL 5425478, at *3 (N.D. Tex. Oct. 23, 2019); *see also Tex. Ass'n of Ctys. Cty. Gov't Risk Mgmt. Pool v. Matagorda Cty.*, 52 S.W.3d 128, 135 (Tex. 2000) (an insurer may seek resolution of a coverage dispute in a declaratory judgment action).  Argonaut, the insurer, initially sued Bludworth and Rio Marine, the third-party defendants.  Argonaut's argument that Bludworth and Rio Marine's counterclaims violate the "no direct action" rule is unpersuasive.  *See In re Essex*, 450 S.W. 3d at 527 (the "no direct action" rule does not apply when it is the insurer that initiates the declaratory judgment action).

Both Rio Marine and Bludworth argue that as third-party beneficiaries under the Argonaut policy, they are entitled to a defense and indemnification from Argonaut.  In response, Argonaut argues that the policy it issued Performance contains no language indicating that Performance and Argonaut entered into the insurance contract for the benefit of Rio Marine or Bludworth.

"A person seeking to establish third-party-beneficiary status must demonstrate that the contracting parties 'intended to secure a benefit to that third party' and 'entered into the contract directly for the third party's benefit.'"  *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017) (quoting *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002)).  "Importantly, the fact that a person

is directly affected by the parties' conduct, or that he may have a substantial interest in a contract's enforcement does not make him a third-party beneficiary." *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 421 (Tex. 2011) (quoting *Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1075 (5th Cir. 2002)) (internal quotations omitted).  "The intent to confer a direct benefit upon a third party 'must be clearly and fully spelled out or enforcement by the third party must be denied.'"  *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007) (quoting *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999)).  A third party must qualify as either a donee or creditor beneficiary. *Id.*  A donee beneficiary will receive the performance promised in the contract as a pure donation; a creditor beneficiary will receive performance because of "a legally enforceable commitment owed by the promisee." *Id.*; *MCI Telecomms.*, 995 S.W.2d at 651.

Bludworth and Rio Marine argue that they are creditor beneficiaries of the Argonaut policy issued to Performance because the policy covers an insured's contractual obligation to defend or indemnify a third-party.  The Performance-Bludworth Master Service Agreement requires Performance to defend and hold harmless Bludworth and its subcontractors for any claim arising out of Performance's services.  (Docket Entry No. 23-4 at 7).  While Argonaut disputes whether this provision qualifies as an "insured contract" under its policy, the presence of the insured contract exception within the policy shows Argonaut's intent to provide defense and indemnity to some contractual indemnitees.  (Docket Entry No. 23-1 at 15).

This provision demonstrates that Bludworth and Rio Marine would be creditor beneficiaries of the Argonaut policy, assuming that the Performance-Bludworth Master Service Agreement is an "insured contract."  Neither the indemnification clause nor the provision covering insured contracts is ambiguous.  Both envision circumstances in which Argonuat would

8

have a legally enforceable commitment to defend or indemnify Performance's contractual indemnitees. *See Cashman Equip. Corp. v. Rozel Operating Co.*, 854 F. Supp. 2d 406, 414 (M.D. La. 2012) (finding that a third-party beneficiary relationship existed between a contractual indemnitee and an insurance company under Texas law). Assuming that Rio Marine and Bludworth's claims are covered by the policy, Argonaut's obligations are to defend Rio Marine and Bludworth in the *Martinez* suit and indemnify them up to the Performance policy limit for any resulting damages. Rio Marine and Bludworth are creditor beneficiaries of the Argonaut policy.

Rio Marine and Bludworth argue in the alternative that they have standing to bring their counterclaim for a declaratory judgment against Argonaut under equitable subrogation. "The doctrine of equitable subrogation allows a party who would otherwise lack standing to step into the shoes of and pursue the claims belonging to a party with standing." *Frymire Eng'g Co. ex rel. Liberty Mut. Ins. Co. v. Jomar Int'l, Ltd.*, 259 S.W.3d 140, 142 (Tex. 2008). Texas courts liberally construe the subrogation doctrine. *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 532 (5th Cir. 2019). "[E]quitable (or legal) subrogation does not depend on contract but arises in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter." *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 774 (Tex. 2007). "Thus, a party seeking equitable subrogation must show it involuntarily paid a debt primarily owed by another in a situation that favors equitable relief." *Frymire Eng'g*, 259 S.W.3d at 142.

No party disputes that Rio Marine and Bludworth have paid their own defense costs in the *Martinez* suit. If the Master Service Agreement indemnity clause is covered under the

Argonaut policy, then the defense costs Rio Marine and Bludworth have already paid would be third-party debts that Argonaut would owe to Bludworth and Rio Marine.

Bludworth and Rio Marine involuntarily paid their defense costs after Bludworth sent Performance a letter demanding that it or its insurer cover Bludworth's defense costs in the *Martinez* suit. (Docket Entry No. 24-4 at 1). Payments are considered involuntary for the purpose of equitable subrogation when the payor makes them under a legal obligation or to preserve rights or property. *Frymire Eng'g*, 259 S.W.3d at 145. After Argonaut rejected Bludworth's claim, Bludworth had to pay its own defense costs in the *Martinez* suit or risk a default judgment. Bludworth and Rio Marine are necessarily funding their own defense because Argonaut denied coverage.

Argonaut counters that even if the policy covers Rio Marine's and Bludworth's involuntarily paid defense costs, a third-party claim against an insurer is not consistent with the purpose of equitable subrogation. Equitable subrogation is broadly interpreted in Texas and can be used for insurance disputes between third parties and insurance companies. The Texas Supreme Court has, for example, allowed an excess insurer to pursue negligence claims against a primary insurer and legal malpractice claims against a defending law firm after the excess insurer settled the underlying lawsuit. *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 20 S.W.3d 692, 695–96 (Tex. 2000). Even though the insured did not intend to pursue the tort claims against the primary insurer, the excess insurer's claims could proceed under the doctrine of equitable subrogation. *Id.* at 696; *see also Kenyon Int'l Emergency Servs., Inc. v. Starr Indem. & Liab. Co.*, No. 01-17-00386-CV, 2018 WL 6241461, at *7 (Tex. App.—Houston [1st Dist.] Nov. 29, 2018, pet. denied) (mem. op.) (allowing a claim for equitable subrogation made by a third party against an insurer to proceed).

10

Rio Marine and Bludworth similarly assert claims against a third-party insurer that they allege breached its duty to pay their defense costs. Assuming Bludworth and Rio Marine's interpretation of the Performance-Bludworth Master Service Agreement is correct, equitable subrogation permits Budworth to step into the shoes of Performance and demand that Argonaut pay the defense costs. *See Keck*, 20 S.W.3d at 696.

Both Rio Marine and Bludworth have standing to pursue their counterclaims against Argonaut either as third-party beneficiaries or under the doctrine of equitable subrogation.

## IV.    Interpretation of the Argonaut Policy

Argonaut denied the claims for a defense and indemnity that Rio Marine and Bludworth made under the policy Argonaut issued to Performance. Argonaut based its denial on its arguments that the Performance-Bludworth Master Service Agreement is not an "insured contract," and, even if it was, its employee exemption precludes coverage. Rio Marine and Bludworth respond that the policy does cover their claims or is at least ambiguous on coverage.

If an insurance policy is reasonably subject to more than one interpretation, it is ambiguous, and it must be interpreted in favor of coverage. *Nat. Cas. Ins. Co. v. W. World Ins. Co.*, 669 F.3d 608, 613 (5th Cir. 2012); *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 133 (Tex. 2010). The Argonaut policy is not ambiguous. Under the policy, the Performance-Bludworth Master Service Agreement is an "insured contract," but the broad employee liability exclusion applies to preclude coverage. The policy does not cover the claims for a defense and indemnity for costs and damages Rio Marine and Bludworth incur as a result of the *Martinez* suit.

A.      The Performance-Bludworth Master Service Agreement as an Insured Contract

The Performance-Bludworth Master Service Agreement required Performance to pay Bludworth's costs for defending itself against Martinez's claims in the underlying case, and to indemnify Bludworth for damages it incurs, because Martinez's claims arise from Performance's work under the subcontract.   (Docket Entry No. 23-4 at 7).   This obligation extends to Bludworth's subcontractors, including Rio Marine, and applies even if the injuries resulted from Bludworth's or Rio Marine's negligence.   (*Id.*).   The language clearly expresses the intent to cover negligence.   The provision is bolded and in all caps, setting it off from the main body of the Master Service Agreement.   (*Id.*).   The provision is enforceable under Texas law.   *See XL Specialty Ins. Co. v. Kiewit Offshore Servs., Ltd.*, 513 F.3d 146, 149 (5th Cir. 2008) ("contracting parties seeking to indemnify one party from the consequences of its own negligence must express that intent in specific terms, within the four corners of the document") (internal quotations omitted); *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 179 (5th Cir. 2016) (clauses in boldface and all caps are conspicuous under Texas law); *see also* TEX. BUS. & COMM. CODE § 1.201(b)(10) (defining "conspicuous" as "language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size").

The Argonaut policy contains a provision excluding coverage for "bodily injury or property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."   (Docket Entry No. 23-1 at 15).   But this contractual exclusion does not apply to "insured contracts, provided that the bodily injury or property damage occurs subsequent to the execution of the contract or agreement."   (*Id.*).   For the purpose

12

of this exception, "insured contract" means "that part of any other contract or agreement pertaining to the business of the named insured . . . under which the named insured assumes the tort liability of another party to pay for bodily injury or property damage to a third person or organization," as long as that contract does not "indemnif[y] another for the sole negligence of such other person or organization." (*Id.* at 38).

The indemnity provision in the Performance-Bludworth Master Service Agreement makes it an "insured contract" under the insurance policy Argonaut issued to Bludworth. The Master Service Agreement requires Performance to indemnify Bludworth and its subcontractors for tortious claims "in any way connected" to Performance's duties under the Master Service Agreement. (Docket Entry No. 23-4 at 7). Performance employed Martinez and assigned him to work at the Bludworth shipyard, where, he alleges, his injuries occurred due to the negligence of Bludworth and Rio Marine, another Bludworth subcontractor. (Docket Entry 23-2 at 5–6). Martinez's injures occurred in July 2018, after the Master Service Agreement became effective in January of 2017. (*Id.* at 3; Docket Entry No. 23-4 at 2). Because the Master Service Agreement requires Performance to incur the tort liabilities of another party, and the tort liabilities in question occurred after both Performance and Bludworth signed the Agreement, the indemnification clause is a valid, enforceable insured contract and is excepted from the contractual liability exclusion under the clear language of the Argonaut policy.

Argonaut briefly argues that the indemnification provision is not an insured contract because it could lead to indemnifying Bludworth for its sole negligence. Under Texas law, however, an insurance company must defend a suit if the complaint potentially includes a covered claim. *Cf. Lyda Swinerton Builders, Inc. v. Okla. Sur. Co.*, 903 F.3d 435, 446 (5th Cir. 2018) ("Where the complaint does not state facts sufficient to clearly bring the case within or

without coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy.") (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997)). Performance, and, by extension, Argonaut, cannot avoid their duty to pay defense costs in the underlying lawsuit because the claims might eventually be proven outside the policy's coverage. *See Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 380 (Tex. 2012) ("As to the complaint, if it includes even one covered claim, the insurer must defend the entire suit."). Martinez's allegations against Bludworth and Rio Marine are not allegations that only one party's negligence caused his injuries, but rather that the negligence of the subcontractors contributed to and caused his accident and injuries.  (Docket Entry No. 23-2 at 5–6).  Because the underlying complaint does not allege that Bludworth's or Rio Marine's sole negligence caused the injuries, this limiting clause within the policy definition of insured contracts does not apply.

### B.      The Employee Exception

The analysis does not end there.  While the contractual exclusion does not apply to Martinez's claims against Rio Marine and Bludworth, claims can be subject to multiple exclusions.  *Liberty Surplus Ins. Corp. v. Allied Waste Sys., Inc.*, 758 F. Supp. 2d 414, 423 (S.D. Tex. 2010) ("The absence of an exclusion from coverage—or, more precisely, the presence of an exception to an exclusion from coverage—does not equate to coverage.").

Argonaut argues that even if the Master Service Agreement is an "insured contract" under the policy, Rio Marine's and Bludworth's coverage demands are precluded by other policy exclusions.  Argonaut focuses on the employee exclusion, pointing out that because the *Martinez* suit involves a Performance employee, coverage is excluded.  Rio Marine and Bludworth argue

that to read the employee exclusion so broadly would create conflicts throughout the policy and make several clauses meaningless.  Rio Marine and Bludworth instead argue that the employee exclusion refers only to tort contribution or tort indemnity claims, and not to contractual liability stemming from an employee's injuries.

The policy excludes coverage for bodily injuries of "an employee of the insured arising out of and in the course of employment by the insured; or performing duties related to the conduct of the insured's business."  (Docket Entry No. 23-1 at 16).  The exclusion applies whether or not "the insured may be liable as an employer or in any other capacity; and to any obligation to share damages with or repay someone else who must pay damages because of the injury."  (*Id.*).  An employee exclusion often provides an exception for insured contracts.  S*ee, e.g.*, *Cincinnati Ins. Co. v. Richfield Corp.*, 395 F. Supp. 3d 894, 906 (E.D. Mich. 2019); *Evanston Ins. Co. v. Bounds*, No. 9:16-cv-204, 2017 WL 10155126, at *5 (E.D. Tex. 2017); *Materials Evaluation & Tech. Corp. v. Mid-Continent Cas. Co.*, 519 F. App'x 228, 229 (5th Cir. 2013) (per curiam); *but see Simco Enters., Ltd. v. James River Ins. Co.*, 566 F. Supp. 2d 555, 566 (E.D. Tex. 2008) (the policy contained a clause clarifying that the employer's liability exclusion applied to "insured contracts").  The Argonaut policy omits this exception, but, unlike the insurance policy in *Simco*, the Argonaut policy is silent as to whether the exclusion applies to claims covered by an "insured contract."

Argonaut argues that the exclusion applies to "any obligation to share damages" because of bodily injury to a subcontractor's employee on Bludworth's worksite, including any obligation created in an "insured contract."  *Cf. United States v. Gonzalez*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'").  The expansive meaning of the word "any," in conjunction

15

with the absence of an exception for insured contracts, seems to indicate that the employee exclusion applies to claims stemming from an employee's bodily injuries.  If the parties intended to except claims arising from an "insured contract" from the exclusion, the standard insured-contract exception would have been included in the policy.  Its absence here indicates that the exclusion should apply to Bludworth's and Rio Marine's claims.

Bludworth and Rio Marine explain the absence of an exception for "insured contracts" as a reason to limit the exclusion to tort contribution or tort indemnity claims.  Bludworth and Rio Marine point out that the leased-worker-exclusion endorsement excludes "any sum(s) for which the insured is or may become liable to pay including costs of defense, with respect to legal and/or contractual liability for Bodily Injury . . . to any Leased Worker."  (Docket Entry No. 23-1 at 52).  They argue that Argonaut knew how to specifically exclude contractual damages for bodily injury claims and that the absence of an exclusion endorsement within the employee exclusion must be seen as intentional.

Regardless of the presence of more specific clauses elsewhere in the policy, the employee exclusion rejects "any obligation" to repay another and applies to Performance's employee liability "in any capacity."   (*Id.* at 16).   This result is consistent with how other courts interpreting the same or similar employee exclusions have ruled.  *See, e.g.*, *Kirby v. Ashford*, 208 So. 3d 932, 939 (La. Ct. App. 2016) ("[T]he unambiguous language of the exclusion provides that it applies to 'any obligation to share damages with or repay someone else who must pay damages' in connection with an employee's injuries."); *Burrows v. Exec. Prop. Mgmt. Co.*, 137 So. 3d 698, 703–04 (La. Ct. App. 2014) (same); *Westchester Fire Ins. Co. v. Am. General Fire & Cas. Co.*, 790 S.W.2d 816, 818 (Tex. App.—Austin 1990, no writ) ("In context and in the language employed, the exclusion was plainly intended to exclude any obligation on [the

16

insurer's] part to pay any liability incurred by [the insured] by reason of bodily injury sustained by an employee, whether that liability was direct . . . or indirect (as in the case of a secondarily-liable party who becomes entitled to indemnity by discharging an obligation for which [the insured] is primarily liable).") (emphasis in original); *see also Nautilus Ins. Co. v. Zamora,* 114 F.3d 536, 538–39 (5th Cir. 1997) ("[I]n an uninterrupted line of cases, Texas courts (including the Texas Supreme Court) have consistently interpreted policy language identical to that in this case and come to the conclusion that the language unambiguously excludes from coverage injuries occurring while the employee is performing work-related duties.").

The difference between the phrase "obligation to share or repay damages" in the employee exclusion, and the more specific language "assumption of liability in a contract" in the contractual exclusion, does not mean that the first cannot encompass the second.  (Docket Entry No. 23-1 at 15–16).  The contractual exclusion is more specific and applies only to contractual liability.  The employee exclusion applies more broadly, as indicated by the use of the word "any" to reiterate the broad nature of the exclusion.  Even if the phrases "any obligation to share or repay damages" encompasses contract damages, more precise language may be used elsewhere in the policy to exclude only contractual damages.  (*Id.*).  Defense and indemnity liabilities assumed within a contract are an "obligation to share or repay damages" and are excluded under the plain language of the employee exclusion.  (*Id.*).

Bludworth and Rio Marine argue that this broad reading of the employee exclusion creates a number of conflicts throughout the contract. None of these alleged conflicts overcomes the plain meaning of the exclusion itself.

Bludworth and Rio Marine first argue that Argonaut's interpretation would never afford Performance coverage for insured contract obligations, citing a case that also dealt with an

employee exclusion that was silent on whether insured contracts were excepted.  *See Hardy v. Ducote*, Nos. 02-1520-A, 04-0789-A, 2007 WL 1378511, at *4 (W.D. La. May 4, 2007) ("If we were to apply the employee exclusion over and against contractual indemnity coverage, this would effectively negate the precise coverage provided by the contractual indemnity provision.").  The language of the indemnity provision undermines this argument.  The indemnity provision requires Performance, and, by extension, Argonaut, to indemnify Bludworth and its subcontractors for bodily injury claims made by "any officer, employee, agent, representative, or invitee" of Performance; bodily injury claims made by "any third party"; and "any property damage" to Bludworth, Performance, or a third party.  (Docket Entry No. 23-4 at 7).  While the employee exclusion does prohibit a small subset of these claims, the indemnification provision is broader and does not make the insured contract exception meaningless.

Rio Marine and Bludworth then point to the policy's cross-liability-exclusion endorsement to argue that this endorsement would be meaningless if the employee exclusion broadly applies.  The cross-liability endorsement reads:

> It is hereby agreed that this policy shall not apply to any liability of one Named Insured for Bodily Injury or Personal and Advertising Injury to an Employee of another Named Insured, nor shall it apply to Property Damage to real or personal property of another Named Insured.  All other terms and conditions remain unchanged.

(Docket Entry No. 23-1 at 50).

Contrary to Bludworth's and Rio Marine's contention, this endorsement does not lose its meaning if coverage for bodily injuries to Performance's employees is excluded from the policy.  For example, if Performance formed a subsidiary company that was another named insured under the policy, and one of this subsidiary's employees attempted to sue Performance for

18

injuries sustained at work, the policy would provide coverage without the cross-liability exclusion.  This endorsement is necessary to prevent potentially collusive claims of one named insured against another named insured.

Bludworth and Rio Marine also contend that the subcontractor-certificate-warranty endorsement is made meaningless by a broad reading of the employee exclusion.  This endorsement requires any subcontractor of Performance to obtain a comprehensive general liability insurance policy that includes "anyone whom [Performance] is required by written contract to name as an additional insured" as an additional insured on the subcontractor's policy.  (*Id.* at 58).  Bludworth and Rio Marine argue that this would require Performance to "piggy-back itself" onto its subcontractor's policy to provide coverage for its own contractual indemnities.

Whether or not the policy requires this result is irrelevant to whether the employee exclusion applies to an "insured contract."  While the hypothetical situation described by Bludworth and Rio Marine may lead to an unusual result, it has limited application in determining the parties' intent as to whether the employee exclusion applies to "insured contracts."  The subcontractor-certificate-warranty endorsement is not made meaningless by Argonaut's interpretation of the policy and does not create an internal conflict.

Finally, Bludworth and Rio Marine argue that the leased-worker-exclusion endorsement is made meaningless by Argonaut's interpretation.  This endorsement states that the policy: "specifically excludes any sum(s) for which the insured is or may become liable to pay including costs of defense, with respect to legal and/or contractual liability for Bodily Injury and/or Personal and Advertising Injury to any Leased Worker.  All other terms and conditions remain unchanged."  (Docket Entry No. 23-1 at 52).  Because the policy defines "employee" to include

19

"leased workers," Bludworth and Rio Marine contend that the endorsement is meaningless if the employee exclusion already eliminates all liability to employees.  (*Id.* at 37).

The employee exclusion is not as broad as Bludworth and Rio Marine contend.  The employee exclusion applies only to bodily injuries that employees suffer on the worksite or while accomplishing duties related to Performance's business; the leased worker exclusion endorsement also applies to personal and advertising injuries incurred by the leased worker. This broader exclusion for leased workers makes sense.  Argonaut would likely provide less coverage for employees of other companies that it has not directly insured than it would provide for the employees of its named insured.

The employee exclusion does not allow the coverage that Bludworth and Rio Marine seek.

## V.    Conclusion

A close reading of the policy and its exclusions and exceptions demonstrates that the employee liability exclusion applies to Bludworth's and Rio Marine's claims because of the broad wording of the exclusion and the absence of an exception for insured contracts.  Applying this exclusion allows each policy section to retain separate meaning.  Argonaut's motion for summary judgment is granted.  (Docket Entry No. 23).   Starstone's motion for summary judgment is moot.  (Docket Entry No. 45).   The cross-motions filed by Rio Marine and Bludworth are denied.  (Docket Entry Nos. 24, 25).

SIGNED on July 2, 2020, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge

20